UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| KAMBERLEIGH JOHNSTON, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 2:14-cv-260 |
| ) | |
| MARJORIE W. JOHNSTON, ) | |
| OCWEN LOAN SERVICING, LLC, ) | |
| WELLS FARGO BANK, N.A., and ) | |
| JAN M. SENSENICH, ) | |
| ) | |
| Appellees. ) | |

**OPINION AND ORDER DENYING MOTION FOR EXTENSION OF TIME TO PERFECT RECORD AND FILE BRIEF BASED UPON *PRO SE* EXCUSABLE NEGLECT AND/OR MOTION TO STAY CASE PENDING RESOLUTION OF VERMONT SUPREME COURT AND RUTLAND SUPERIOR COURT PROBATE REVIEW**
(Doc. 6)

Pending before the court is a motion for an extension of time to perfect the record on appeal and submit a brief, or for a stay, filed by Appellant Kamberleigh Johnston ("Appellant"). Appellant is the son of Debtor Marjorie W. Johnston ("Debtor").

Debtor is represented by Kathleen Walls, Esq. Creditor Wells Fargo Bank, N.A. ("Wells Fargo") is represented by Grant C. Rees, Esq. Creditor Ocwen Loan Servicing, LLC, is represented by Sarah B. Gullon, Esq. The Chapter 13 Standing Trustee is Jan M. Sensenich. Appellant is self-represented. None of Appellees submitted a response to Appellant's motion or have otherwise participated to date in this appeal.

I.  **Procedural History.**

   A.  **Proceedings Before the Bankruptcy Court.**

On July 28, 2014, Debtor filed a Chapter 13 proceeding. On August 18, 2014, Debtor filed a notice of voluntary dismissal of her case, pursuant to 11 U.S.C. § 1307(b), on the grounds that her estranged husband had fallen ill and that she needed to travel to

Florida to attend to him and other issues. (Docs. 2-2 & 2-4.) Wells Fargo objected to dismissal (Doc. 2-5), arguing that Debtor originally filed her Chapter 13 proceeding two days prior to a scheduled foreclosure sale of two commercial properties in order to delay those sales and thus Debtor had not filed in good faith. Wells Fargo also argued that Debtor had a practice of filing Chapter 13 proceedings to avoid foreclosure sales. On this basis, Wells Fargo requested that the Bankruptcy Court impose a one-year ban on Debtor's right to file a subsequent bankruptcy petition if Debtor's case was dismissed.

On September 16, 2014, Debtor filed a response to Wells Fargo's objection and request for a one-year filing ban. (Doc. 2-7.) Debtor maintained that she filed her Chapter 13 proceeding in good faith and that she sought voluntary dismissal based on post-petition factors that were beyond her control.

On September 29, 2014, Appellant objected to dismissal of Debtor's Chapter 13 case as a "non-hostile creditor/interested person" on the basis that he was a bona fide creditor. Appellant requested that the Bankruptcy Court deny Debtor's request and force Debtor to proceed with her Chapter 13 case and that any dismissal be deferred until the Bankruptcy Court resolved certain issues involving Debtor's creditors.[1] Wells Fargo objected to Appellant's opposition, arguing it was untimely filed and there was "no basis" for him to "successfully oppose Debtor's motion to dismiss her bankruptcy." (Doc. 2-9 at 2.)

On October 6, 2014, the Bankruptcy Court issued a written order, memorializing the court's earlier ruling at a hearing on Debtor's request for dismissal. (Doc. 2-11.) The

---

[1] Appellant's objection is not part of the record on appeal. A review of Wells Fargo's objection to it, however, indicates that Appellant sought "'a stay on all other creditors,'" sought to initiate an adversary proceeding against the other creditors, and requested that the Bankruptcy Court "address issues which are . . . barriers to confirmation of a plan including but not limited to striking the 1-4 riders in some of the mortgage[s] as unenforceable, declaring that span 540-170-14255 is 'one homestead,' [and] declaring that escrow accounts cannot be created until a bank can demonstrate that a bona fide 'default' occurred regarding the property taxes in Vermont[.]" (Doc. 2-9 at 2-3.) Wells Fargo argued "such claims are advanced in an effort to re-litigate claims [Appellant] unsuccessfully attempted to advance in State court on behalf of Debtor that the contiguous properties [D]ebtor owns in Rutland constitute, in total, her principal residence." *Id.* at 3.

Bankruptcy Court found "nothing in the record to indicate that this particular case was filed in bad faith or that the motion to dismiss was filed in bad faith" and thus Debtor had an "absolute right" to immediate dismissal of her Chapter 13 case. *Id.* at 2. The Bankruptcy Court overruled Appellant's objection to dismissal, denied Wells Fargo's request for a one-year filing ban, and granted Debtor's motion to dismiss.

Thereafter, Appellant moved for reconsideration of the Bankruptcy Court's order dismissing Debtor's case (Doc. 2-12), arguing that there was no evidence of Debtor's bad faith but rather that Wells Fargo acted in bad faith. He requested that Wells Fargo's objection to dismissal be stricken from the record because there was no support for a one-year filing ban, and he requested that Wells Fargo provide an accounting of billable hours.

The Bankruptcy Court denied Appellant's motion for reconsideration on the basis that it had "acted appropriately in (1) considering the allegations of bad faith in this case and Wells Fargo's request for a one-year bar, and (2) having found no substance to the allegations, promptly granting the Debtor's motion to dismiss at that time." (Doc. 2-13 at 2.) The Bankruptcy Court also denied Appellant's other requests because Wells Fargo had not sought legal fees in the case and because "the fact that a pleading may not espouse the view ultimately adopted by the court is not an appropriate grounds to strike the pleading." *Id.* at 2-3.

Appellant then filed a motion to vacate the Bankruptcy Court's order denying his motion for reconsideration. (Doc. 2-14.) Appellant maintained that the Bankruptcy Court should have granted his request to strike Wells Fargo's objections from the record as the denial to do so "le[ft] 'inaccurate information' filed by [the attorney for Wells Fargo] in the official record and create[d] 'future' prejudice for the [D]ebtor." *Id.* at 2. He requested an evidentiary hearing, arguing that the Bankruptcy Court should allow him to question "other creditors on issues directly relevant to the 1 year ban and related issues." *Id.* On the same day, Appellant filed a request for permission to file an interlocutory appeal. (Doc. 2-15.)

The Bankruptcy Court denied Appellant's motion to vacate, finding that Appellant raised the same arguments in that motion as he advanced in support of his objection to dismissal and his motion for reconsideration. (Doc. 2-16.) The Bankruptcy Court also denied, as moot, Appellant's request for permission to file an interlocutory appeal because the Bankruptcy Court's order dismissing Debtor's case was a final order pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court, however, subsequently granted Appellant's request for an extension of time to file a notice of appeal (Doc. 2-17), finding Appellant had demonstrated excusable neglect for his untimely filing of a notice of appeal (Doc. 2-18). The Bankruptcy Court ordered Appellant's notice of appeal to be treated as timely filed as of December 2, 2014. (Doc. 2-20 at 4.)

### B.     Appeal Before This Court.

On December 9, 2014, the court received the record on appeal from the Bankruptcy Court (Doc. 1), and on January 21, 2015, the court received a supplemental record on appeal from the Bankruptcy Court (Doc. 2). Pursuant to Rule 8018 of the Federal Rules of Bankruptcy Procedure, Appellant was required to serve and file his brief within thirty days "after the docketing of notice that the record has been transmitted or is available electronically." Fed. R. Bankr. P. 8018(a)(1). Appellant did not file his brief within the time accorded under the Rules.

On April 28, 2015, the court issued an Order to Show Cause On or Before June 1, 2015 that directed Appellant to address why the pending appeal should not be dismissed for his failure to comply with the Federal Rules of Bankruptcy Procedure, including the failure to timely file his brief. (Doc. 3.) The court informed Appellant of the potential for dismissal for continued delay.

On June 1, 2015, Appellant responded to the Order to Show Cause by moving for an extension of time to file his brief and requesting sixty days in light of his self-represented status. (Doc. 4.) The court granted Appellant's motion and ordered that Appellant had until August 24, 2015 to comply with the court's Order. (Doc. 5.) In doing so, the court ordered that "[f]urther extensions are unlikely absent compelling

circumstances" and that "[t]he parties are expected to address the issue of Appellant's standing to bring this appeal." *Id.*

On August 24, 2015, Appellant filed the pending motion for an extension of time to file his brief or for a stay of this appeal. (Doc. 6.) Appellant asserts that the previous sixty days was not sufficient to file his brief because he is self-represented with limited experience in federal court and because there are state court cases regarding Debtor's properties that remain pending before the Vermont Supreme Court and the Rutland Superior Court, which he argues must be completed before he pursues this appeal.

## II. Conclusions of Law and Analysis.

The Federal Rules of Bankruptcy Procedure allow the court to excuse Appellant's failure to timely file his appellate brief "where the failure to act was the result of excusable neglect," Fed. R. Bankr. P. 9006(b)(1), which "tak[es] account of all relevant circumstances surrounding" the failure to comply with the Rules. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see In re Lynch*, 430 F.3d 600, 605 (2d Cir. 2005) (holding that "Rule 9006(b)(1) squarely controls the question [of] under what circumstances should an action or filing be permitted in a bankruptcy proceeding, notwithstanding the party's failure to comply with a deadline"; that "the action should be permitted where the untimeliness is the result of excusable neglect, as that standard has been developed by *Pioneer*"; and that where "no excusable neglect was shown, the late filing is not permitted").

The "'relevant circumstances'" to be considered include the length of Appellant's delay and its potential impact on judicial proceedings; the reason for his delay, including whether it was within his reasonable control; and whether Appellant has acted in good faith, as well as the danger of prejudice to the other parties involved in this appeal. *In re Lynch*, 430 F.3d at 603 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). While *pro se* litigants "are generally afforded some latitude, they are nonetheless required to learn and comply with procedural rules." *In re Truong*, 388 B.R. 43, 45 (S.D.N.Y. 2008), *aff'd*, 327 F. App'x 260 (2d Cir. 2009) (affirming district court's finding that *pro se* appellant failed to show excusable neglect for failure to file brief in a bankruptcy appeal); *see also*

*Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995) (directing that "while a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them") (citations omitted)).

### A.  Whether to Grant Appellant's Request for an Extension.

Appellant seeks an unspecified "enlargement of time" to file his brief and perfect the record. (Doc. 6 at 2.) At this juncture, Appellant has delayed filing his brief for approximately six months, during which time the court excused Appellant's initial failure to comply with the deadline for his brief and granted Appellant a generous sixty-day extension. The court included in its June 23, 2015 Order explicit instructions that further extensions were not likely to be granted absent "compelling circumstances." (Doc. 5.)

On the date Appellant's brief was due, Appellant filed the pending motion seeking another extension of time to file his brief. He points out that there are pending state court cases, including two appeals before the Vermont Supreme Court (with a third expected to be filed) as well as a foreclosure action before the Rutland Superior Court. He represents that the latter involves an issue of "the role of the US Bankr[up]tcy Court and what constitutes a final judgment." (Doc. 6 at 1.) He also asserts that it is "unclear of how much overlap exists by the federal Court [which] has a duty to make sure all relief is provided even if not explicitly asked for in the pleadings." *Id.* Appellant provides no other explanation of how the pending state court cases affect the determination of whether the Bankruptcy Court erred in dismissing Debtor's Chapter 13 proceeding and in denying Appellant's other requests for relief. Appellant further provides no explanation of how those proceedings impacted his ability to prepare a brief in this appeal. The length of delay, the reason for the delay, and whether the delay was within Appellant's control thus all weigh against excusing Appellant's continued non-compliance with the Federal Rules of Bankruptcy Procedure.

In examining the danger of prejudice to the other parties involved in this appeal, the court notes that Appellant appeals from a final order of the Bankruptcy Court granting Debtor's voluntary request for dismissal pursuant to 11 U.S.C. § 1307(b). Section 1307(b) provides: "On request of the debtor at any time, if the case has not been

converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." 11 U.S.C. § 1307(b). Although Appellant is correct there is a circuit split regarding whether a debtor's right to dismissal under § 1307(b) is absolute, the Second Circuit has unequivocally held that "a debtor has an absolute right to dismiss a Chapter 13 petition under § 1307(b), subject only to the limitation explicitly stated in that provision" that dismissal must proceed an order for conversion. *In re Barbieri*, 199 F.3d 616, 619 (2d Cir. 1999). Notwithstanding Appellant's insistence that the Supreme Court must resolve this dispute among the circuit courts, the Bankruptcy Court correctly applied the law of the Second Circuit that a debtor has an absolute right of dismissal pursuant to § 1307(b).

Appellant also challenges a debtor's absolute right to dismissal in light of the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), which addressed a debtor's right to convert a Chapter 7 proceeding to a Chapter 11, 12, or 13 proceeding pursuant to 11 U.S.C. § 706(a). Section 706(a), which governs Chapter 7 proceedings, contains similar language to 11 U.S.C. § 1307(a), which governs Chapter 13 proceedings, that a debtor "may convert a case[.]" *Compare* 11 U.S.C. § 706(a), *with* 11 U.S.C. § 1307(a). In *Marrama*, the Supreme Court rejected the debtor's position that "he had an absolute right to convert his case from Chapter 7 to Chapter 13 under the plain language of § 706(a)" and held that the debtor "forfeited his right to proceed under Chapter 13" when the debtor sought conversion in bad faith. *Marrama*, 549 U.S. at 370-71.

While Appellant challenges Debtor's right to voluntary dismissal in light of *Marrama*, *Marrama* does not bar or otherwise undermine Debtor's request for dismissal for several reasons. First, *Marrama* addressed a conversion request in a Chapter 7 proceeding pursuant § 706(a), as opposed to in a Chapter 13 proceeding pursuant to § 1307(a). Second, assuming that *Marrama* would apply to a Chapter 13 proceeding because both § 706(a) and § 1307(a) contain similar language that provides that a debtor "may" seek to convert a case, the language of § 1307(b) that a court "shall dismiss a

7

case" upon the debtor's request, see § 1307(b), indicates its "mandatory nature," notwithstanding a debtor's bad faith. *In re Barbieri*, 199 F.3d at 619 ("The term 'shall,' as the Supreme Court has reminded us, generally is mandatory and leaves no room for the exercise of discretion by the trial court.") (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)). Third, addressing a debtor's absolute right to dismissal post-*Marrama*, at least one district court in the Second Circuit noted that *Barbieri* has not been overruled and that it was therefore "bound by the holding in *Barbieri* that the right of voluntary dismissal under § 1307(b) is absolute." *In re Procel*, 467 B.R. 297, 305, 308 (S.D.N.Y. 2012). Finally, even *Marrama* directs that a debtor forfeits the absolute right to dismissal for bad faith conduct, the Bankruptcy Court found no evidence of bad faith conduct. Throughout this case, Appellant has consistently maintained that Debtor acted in good faith and has not altered that position in this appeal.[2]

Because the Bankruptcy Court properly dismissed Debtor's Chapter 13 case upon Debtor's request and after determining Debtor acted in good faith, granting Appellant's request for an indefinite extension or stay would prejudice Debtor, as well as the other creditors in this case, all of whom did not appeal the Bankruptcy Court's dismissal order.

For these reasons, the court finds that Appellant has not met his burden of demonstrating that an extension of time to file his brief is warranted, nor has Appellant demonstrated that the relevant circumstances establish excusable neglect for his failure to file his brief in accordance with the Federal Rules of Bankruptcy Procedure. *See United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011) (noting that the burden of demonstrating that a continuance is necessary is on the party requesting it and that "whether to grant a continuance is a matter traditionally within the discretion of the trial

---

[2] Appellant has submitted an order from a Vermont Probate Court which purports to authorize Appellant to act on Debtor's behalf in the Bankruptcy Court. (*See* Doc. 4-1 at 2.) As Appellant designates himself as Debtor's creditor in this bankruptcy case, it is not clear how he can overcome the conflict of interest inherent in these dual roles. *See* 14 V.S.A. § 3071(c) ("The guardian shall always serve the interests of the person under guardianship and shall bring any potential conflicts of interest to the attention of the court."). Appellant also has not been substituted, or sought to be substituted, as the Debtor.

judge") (internal quotation marks omitted). Appellant's request for an extension of time to file his brief is DENIED.

### B.  Whether to Grant Appellant's Requests for a Stay.

Appellant's pending motion seeks "a stay on all creditors to [the Chapter 13 proceeding] that could have a negative impact on the estate," including "any creditor actions related directly or indirectly to" that proceeding.[3] (Doc. 6 at 1-2.) To seek a stay before the district court for "relief" that includes a stay of a judgment, order, or decree, or the suspension or continuation of proceedings, Appellant must provide "the reasons for granting the relief requested and the facts relied upon[.]" Fed. R. Bankr. P. 8007(b)(3)(A). Appellant offers no explanation of why a stay of "creditor actions" is necessary, particularly because none of the creditors of Debtor's estate appealed the dismissal order and only one creditor in addition to Appellant, Wells Fargo, opposed Debtor's request for dismissal.

Appellant also seeks "a stay in the instant case until the Vermont Supreme Court and Rutland Superior Court [probate] review are completed due to overlapping [jurisdictional] issues." (Doc. 6 at 2.) Generally, "'the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[,]'" and this court has an "'unflagging obligation'" to exercise jurisdiction when it exists. *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "The decision as to whether to stay a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court," and turns also on "the matter of the state court's jurisdiction to resolve the controversy." *United States v. Pikna*, 880 F.2d 1578,

---

[3] "Ordinarily, a party must move first in the bankruptcy court" for "relief" that includes a stay of a judgment, order, or decree, or the suspension or continuation of proceedings, and if the party has not done so but later seeks a stay in the district court, the party must demonstrate that "moving first in the bankruptcy court would be impracticable." Fed. R. Bankr. P. 8007(a)(1), (b)(2)(A). It appears that Appellant unsuccessfully requested that the Bankruptcy Court "'grant [him] a stay on all other creditors in the instant case.'" (Doc. 2-9 at 2-3.)

1582 (2d Cir. 1989) (using the same factors for evaluating the propriety of a stay as for abstention) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Colo. River Water Conservation Dist.*, 424 U.S. at 813-17 ). "[T]he presumption is in favor of the federal court's retaining jurisdiction, not yielding it[.]" *Id.* (citing, in part, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 (noting "a stay is as much a refusal to exercise federal jurisdiction as a dismissal"). A stay in a federal case is thus warranted in "'exceptional circumstances'" based on the "'clearest of justifications.'" *Woodford*, 239 F.3d at 523 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25-26).

In this case, the court has no factual basis for concluding that this bankruptcy appeal overlaps with pending state court proceedings. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) (explaining state and federal proceedings are "essentially the same [if] there is an identity of parties, and the issues and relief sought are the same"). To the extent that there is any overlap in the matters before the state and federal courts, the state foreclosure proceedings are properly committed to the state courts to resolve. *See Pikna*, 880 F.2d at 1582 (directing a district court considering "whether or not to grant" a stay to evaluate "whether federal or state law provides the rule of decision"); *see also* Vt. R. Civ. P. 80.1 (establishing the proceedings under Vermont law for a civil action for foreclosure). In contrast, this appeal turns exclusively on issues of federal law. *See Woodford*, 239 F.3d at 523 (explaining that issues of federal law are a "'major consideration'" for determining to retain jurisdiction) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26).

Against this backdrop, Appellant's request for an indefinite stay of this appeal while state court cases are pending is unwarranted and contrary to the court's obligation to ensure a speedy, inexpensive, and just determination of this appeal. *See* Fed. R. Civ. P. 1 (noting procedural rules are meant "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Appellant's requests for a stay are DENIED.

### C. Whether Appellant Has Standing.

Appellant contends that the issue of standing is moot "since no party reserved the issue in front of the [B]ankruptcy Court." (Doc. 6 at 2.) "The question of standing is not subject to waiver[.]" *United States v. Hays*, 515 U.S. 737, 742 (1995). Moreover, because it "derives from the 'case or controversy' requirement of Article III" of the Constitution, the lack of standing "may be raised at any time" by any party or by the court *sua sponte*. *Wight v. BankAm. Corp.*, 219 F.3d 79, 86, 90 (2d Cir. 2000); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (explaining the court can raise Article III standing *sua sponte*, including on appeal). As "a prerequisite to the invocation of federal court jurisdiction[,]" the party "invoking federal court jurisdiction" bears the burden of demonstrating that he or she meets the requirements for standing. *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 200-01 (2d Cir. 2014); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("Since [standing is] an indispensable part of the plaintiff's case, [standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

With regard to standing in this case, the Second Circuit has "'adopted the general rule . . . that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court.'" *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88-89 (2d Cir. 2011) (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)). Standing for bankruptcy "is 'stricter than Article III's injury in fact test'" in light of the Second Circuit's "'concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters.'" *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (quoting *In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997)).

11

While it appears that Appellant submitted a proof of claim before the Bankruptcy Court, Appellant does not challenge the Bankruptcy Court's resolution of his proof of claim. *See In re DBSD N. Am., Inc.*, 634 F.3d at 89 (holding a creditor has standing when a bankruptcy court order affects the creditor's ability to receive payment on the creditor's claim). Rather, Appellant maintains that the Bankruptcy Court should have stricken Wells Fargo's filings that challenged Debtor's good faith and that the Bankruptcy Court should have addressed the issues he raised regarding the state court cases involving Debtor's properties and the claims of other creditors in Debtor's Chapter 13 proceeding. Appellant does not explain how he would have standing to raise those issues on appeal unless the Bankruptcy Court's order resolving them directly, adversely, and pecuniarily affected Appellant.[4]

Nothing in the Bankruptcy Court's order "directs any relief against" Appellant. *In re Barnet*, 737 F.3d at 242. To find that Appellant, who suffered no pecuniary harm from dismissal, has standing to challenge the order granting Debtor's request for voluntary dismissal is directly contrary to the Second Circuit's directive that Appellant "must show not only injury in fact under Article III but also that the injury is direct and financial." *In re DBSD N. Am., Inc.*, 634 F.3d at 89 (citations, alterations, and internal quotation marks omitted). To the extent that Appellant has suffered any (yet unidentified) "potential harm," *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 n.3 (2d Cir. 1988), or has been "'indirectly affected'" by the Bankruptcy Court's dismissal order, neither are sufficient to establish standing to appeal. *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997) (noting the Second Circuit's standing requirement "'reflect[s] the understandable concern

---

[4] It is unclear if Appellant is seeking to vindicate Debtor's rights and interests as the basis for his standing in this appeal because he also taken a position adverse to Debtor by arguing that Debtor's request for dismissal should not be granted and by requesting that the Chapter 13 proceeding remain open. Because the Bankruptcy Court afforded Debtor all the relief Debtor requested, Appellant could not appeal based on any harm suffered by Debtor. Moreover, an appellant "must 'assert his own legal rights and interests and not those of third parties[,]'" *In re DPH Holdings Corp.*, 468 B.R. 603, 612 (S.D.N.Y. 2012) (quoting *Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010)), and courts "have often denied standing as to any claim that asserts only third-party rights." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988).

that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order'") (alteration in original) (quoting *Kane*, 843 F.2d at 642). The questionable merits of Appellant's appeal and Appellant's apparent lack of standing thus weigh heavily in favor of declining to authorize further delay.

### D. Whether Dismissal Is Warranted.

In addition to determining whether the court should excuse Appellant's failure to file a timely brief, the court must also consider whether dismissal of this appeal is "appropriate in the circumstances[.]" *In re Tampa Chain Co.*, 835 F.2d 54, 55 (2d Cir. 1987) (concluding most time limitations imposed in the Federal Rules of Bankruptcy Procedure are not jurisdictional and that therefore a district court "should exercise discretion to determine whether dismissal is appropriate" for the failure to file an appellant brief). Prior to dismissal, the court informed Appellant of the "potential" for dismissal and afforded Appellant the "opportunity" to "explain" his "conduct." *In re Harris*, 464 F.3d 263, 272 (2d Cir. 2006) (internal quotation marks omitted) (adopting a "flexible approach" for evaluation of dismissal of "a bankruptcy appeal on procedural grounds rather than to continue to the merits of the appeal"). Other relevant factors the court must consider with regard to dismissal include balancing the interest of justice to all parties against whether a lesser sanction would be appropriate over dismissal; whether any other parties were prejudiced; whether Appellant should be granted the opportunity to rectify the problem; and whether dismissal is warranted to control the court's dockets and prevent delay and abuse of the legal process. *See id.*

Here, Appellant was provided with clear notice in the court's April 28, 2015 Order of the potential for dismissal for any continued delay in filing his brief. That Order also provided Appellant with an opportunity to explain his non-compliance with the Federal Rules of Bankruptcy Procedure. Thereafter, rather than squarely addressing the Order to Show Cause, Appellant requested an extension of the time to file his brief, arguing that he was unfamiliar with the procedures of federal court and that the process was "foreign and scary." (Doc. 4 at 1.) The court granted that request, which provided Appellant with

the opportunity to rectify the problem of his delay with a sixty-day extension to file his brief.

In seeking another continuance on the day his brief was due, Appellant again references his unfamiliarity with the proceedings in federal court and argues against a "procedural dismissal[]." (Doc. 6 at 2.) However, the court expressly cited the rules that govern the submission of an appellant's brief in its April 28, 2015 Order and in its June 23, 2015 Order. The June 23, 2015 Order granted Appellant an extension, which allotted more than sufficient time for Appellant to reference those rules and prepare his brief. He cites no circumstances or justifications that caused him to delay his request for an additional continuance until the last possible date. The court thus cannot determine whether the continuance was sought in good faith. *See In re Tampa Chain Co.*, 835 F.2d at 55-56 (directing a district court to evaluate whether a party's delay and non-compliance is the result of bad faith, negligence, or indifference, any of which could justify dismissal).

Although no other party has participated in this appeal to date, prejudice is likely to ensue when they are required to file responsive briefs to an appeal that appears to lack both standing and merit. That, in turn, will cause those parties to incur unnecessary expenses to continue to litigate a matter that has been dismissed. This likelihood for prejudice thus also weighs in favor of dismissal.

Finally, dismissal is warranted to control the court's dockets and prevent delay in this appeal. The court has already afforded Appellant ample time to file his brief and has examined the arguments he appears to advance on appeal in the light most favorable to him. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (directing that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest") (internal quotation marks omitted). Further proceedings will not cure Appellant's lack of standing and will not alter the conclusion that the Bankruptcy Court properly dismissed Debtor's Chapter 13 proceeding at her request. Any continuation in this appeal would thus not only prejudice Debtor, who sought a voluntary dismissal, and Debtor's creditors, but would leave this

case pending without furthering the interests of justice. Accordingly, the court finds that dismissal is "appropriate in the circumstances" of this appeal, and therefore ORDERS this appeal to be DISMISSED. *In re Tampa Chain Co.*, 835 F.2d at 55; *see also In re Am. Land Acquisition Corp.*, 599 F. App'x 401, 401 (2d Cir. 2015) (confirming a district court's discretion to decline to excuse "procedural noncompliance" with the Federal Rules of Bankruptcy Procedure and to dismiss a bankruptcy appeal on that same basis).

## CONCLUSION

For the foregoing reasons, the court DENIES Appellant's request for an extension of time to file his brief and DENIES Appellant's requests for a stay. The court finds that dismissal is warranted, and this appeal is hereby DISMISSED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 27th day of August, 2015.

Christina Reiss, Chief Judge
United States District Court